UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ronald Bourdon

    v.                                            Case No. 19-cv-258-JL

Warden, Northern New Hampshire
Correctional Facility

## REPORT AND RECOMMENDATION

Northern New Hampshire Correctional Facility inmate Ronald Bourdon has filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Before the court is Mr. Bourdon's response (Doc. No. 10) to the February 6, 2020 Order (Doc. No. 9) directing him to show cause why his § 2254 petition should not be dismissed as untimely, as well as Mr. Bourdon's motion to be released (Doc. No. 11) pending a decision on his petition.

## Background

Mr. Bourdon's § 2254 petition (Doc. No. 1) and the addenda to that petition (Doc. Nos. 4, 10, 11) challenge the validity of his conviction and sentence on multiple felony charges, which arose out of an incident in Nashua, New Hampshire in June 2011, in which Mr. Bourdon wounded two teenagers ("Scott" and "Dylan") with a knife. Scott suffered a knife stab wound in his lower right abdomen, which did not involve internal organ damage. Dylan suffered lacerations on his arm that required sutures.

Mr. Bourdon, who testified at trial, maintained that he had acted in self defense in a scuffle with the victims.  The jury convicted Mr. Bourdon on nine of ten charges, including attempted murder and first degree assault, and he was sentenced, in December 2012, to an aggregate term of 22½ to 50 years in prison.

In his criminal case, Mr. Bourdon filed a notice of appeal, a motion for a new trial, and, in January 2013, an application for sentence review.  His direct appeal ended with an August 2015 decision of the New Hampshire Supreme Court ("NHSC") affirming his conviction, after that court lifted the stay in his direct appeal that had been in place while his state court-appointed counsel litigated an amended motion for a new trial in Superior Court.  Mr. Bourdon also litigated a state habeas petition while his direct appeal was stayed.  Those post-conviction proceedings ended in October 2015 when the NHSC declined to accept Mr. Bourdon's discretionary appeal of the adverse ruling on his state habeas petition.  The Superior Court docket in Mr. Bourdon's criminal case does not indicate when (or whether) the Sentence Review Board ruled on Mr. Bourdon's January 2013 sentence review application in that time period.

Mr. Bourdon filed his first § 2254 petition in April 2015, see Bourdon v. NCF Warden, No. 15-cv-138-LM (D.N.H.) ("Bourdon I"), while the direct appeal of his conviction was still pending

in the NHSC.  The § 2254 petition in Bourdon I was stayed for
eleven months, beginning in June 2015, to allow Mr. Bourdon to
complete the process of exhausting his state remedies on all of
his claims.  After the Superior Court denied Mr. Bourdon's
(second) motion for a new trial in his criminal case, the
Bourdon I court granted Mr. Bourdon's motion to lift the stay in
his first § 2254 petition in May 2016, reserving for a ruling on
a fuller record whether Mr. Bourdon had completely exhausted his
state remedies on all of the federal claims upon which he sought
relief in Bourdon I.  Then, in ruling on the respondent's
summary judgment motion in August 2017 Bourdon I, the court
concluded that Mr. Bourdon's first § 2254 petition included
unexhausted claims.  The Bourdon I court at that time dismissed
Mr. Bourdon's first § 2254 petition without prejudice, upon
finding that (1) his petition remained "mixed," in that he had
not exhausted his state remedies as to all of his federal
claims; (2) he had neither shown good cause sufficient to
reinstate a stay, nor sought leave to drop and forego his
unexhausted claims; and (3) he had not presented a credible
claim of actual innocence.  See Aug. 16, 2017 Order, Bourdon I
(ECF No. 47) (approving July 18, 2017 R&R, Bourdon I (ECF No.
45)).  The Bourdon I court declined to issue a certificate of
appealability, see id. (ECF No. 47), and entered judgment in
August 2017, see id. (ECF No. 48).

After the dismissal of Bourdon I, Mr. Bourdon returned to the state courts for another round of state post-conviction proceedings in 2018/2019.  While those matters remained pending in state court, Mr. Bourdon filed a post-judgment motion in federal court in Bourdon I, seeking to reopen that case.  The Bourdon I court denied that motion and declined to issue a certificate of appealability at that time, again finding that Mr. Bourdon had not presented a credible claim of actual innocence, and that relief under Fed. R. Civ. P. 60(b) was not available.  See Nov. 20, 2018 Order, Bourdon I (ECF No. 62).  In that order, the Bourdon I court flagged the possibility that if Mr. Bourdon finished exhausting all of his state remedies on his claims, he might confront a statute of limitations problem if he were to file a new § 2254 petition.  See id. at 6 n.5.

Mr. Bourdon filed the (second-in-time) § 2254 petition in this case in March 2019.  Initially screening the petition pursuant to 28 U.S.C. § 2243, Rule 4 of the Rules Governing Section 2254 Cases ("§ 2254 Rules"), and LR 4.3(d)(4)(A), this court found that the applicable statute of limitations appeared to have expired in November 2016 while Bourdon I was pending. See Feb. 6, 2020 Order (Doc. No. 9), at 6.  The court then directed Mr. Bourdon to show cause why the instant petition, filed in 2019, should not be dismissed as untimely.  See id. Mr. Bourdon's response to that show cause order, see Doc. No.

4

10, and his motion to be released on bail pending the disposition of this petition, see Doc. No. 11, are the subjects of this Report and Recommendation ("R&R").

## **Discussion**

I.    Response to Order to Show Cause (Doc. No. 10)

A petitioner's compliance with the statute of limitations in filing a § 2254 petition is a threshold issue.  See Day v. McDonough, 547 U.S. 198, 209 (2006).  A district court may dismiss a § 2254 petition sua sponte based on the expiration of the statute of limitations, if the untimeliness is apparent on the face of the petition, and if the petitioner has received fair notice and an opportunity to object.  See id. at 209-10.

This court's prior order to show cause (Doc. No. 9) stated the following:

> This court deems November 27, 2015 to be the date Bourdon's conviction became "final," for purposes of 28 U.S.C. § 2244(d)(1), as that was the last day he could file a timely petition for a writ of certiorari in the United States Supreme Court in the direct appeal of his conviction.  The limitations period appears to have run uninterrupted until its expiration one year later, as none of Bourdon's state post-conviction proceedings noted in the record before this court were pending from November 2015 through November 2016.

This court now reconsiders its prior conclusion that all of Mr. Bourdon's state post-conviction proceedings appeared to have ended prior to November 2015, and that the limitations period

appeared to have run uninterrupted starting on the date his judgment became "final" on November 27, 2015 until it expired one year later.  Upon re-examining the Superior Court docket in Mr. Bourdon's criminal case, this court notes that there is no docket entry stating when (or whether) Mr. Bourdon's January 2013 sentence review application terminated.  If Mr. Bourdon's sentence review application remained pending continuously from a date preceding November 28, 2016 through March 11, 2019, his § 2254 petition filed on that date would appear to be timely. The Superior Court docket in Mr. Bourdon's criminal case does not provide sufficient information about the sentence review proceedings to allow this court to rule out that possibility.

Accordingly, in the Order issued this date, this court directs service of this § 2254 petition upon the respondent Warden, without prejudice to the Warden's ability to move for its summary disposition without a hearing.  As grounds for such a motion, the Warden may show: (1) that the sentence review application terminated on or before November 27, 2016 and that no other pending state post-conviction proceeding tolled the statute of limitations continuously through March 11, 2019; (2) that equitable tolling is unavailable; and (3) that Mr. Bourdon's assertions of innocence do not amount to a credible gateway claim of actual innocence; and/or (4) that Mr. Bourdon has failed to exhaust his state remedies on all of the federal

claims in the instant petition, or has not demonstrated an entitlement to relief on the merits of his claims.

II.  § 2254 Rule 4 Screening and Identification of Claims

    A.  List of Claims

Liberally construed, the instant petition and its addenda (Doc. Nos. 1, 4, 10, 11) assert the following claims for relief:

1.  Mr. Bourdon's convictions for attempted murder and first-degree assault were not supported by sufficient evidence, in violation of his right to due process under the Fourteenth Amendment, as there was insufficient evidence before the jury of serious bodily injury.

2.  Mr. Bourdon's trial attorneys failed to investigate issues relating to Mr. Bourdon's case, and were otherwise unprepared for trial, in violation of Mr. Bourdon's Sixth Amendment right to counsel at all critical stages of the prosecution, and in violation of the Sixth Amendment right to the effective assistance of counsel, in that they:

    a.  did not obtain or review the contents of the bail hearing transcript;

    b.  did not interview key witnesses, including the first responders ("EMTs");

    c.  did not obtain or review a recording of the 911 call;

    d.  did not consult with medical experts or otherwise adequately investigate issues regarding the nature and severity of the victims' wounds; and

    e.  did not investigate the blood drop evidence and crime scene photos for purposes of impeaching the victims' trial testimony.

3.  Mr. Bourdon's trial counsel did not challenge the sufficiency of the charging documents, which inaccurately characterized Scott's abdominal wound as a serious injury

and a "stomach bleed," amounting to a denial of counsel at a critical stage of the prosecution and ineffective assistance of counsel, in violation of Mr. Bourdon's Sixth Amendment right to counsel.

4.    Mr. Bourdon's trial counsel did not object to or effectively rebut the prosecutor's opening statement, which mischaracterized the evidence of the extent and severity of the victims' wounds, in violation of Mr. Bourdon's Sixth Amendment right to the effective assistance of counsel and to have counsel at all critical stages of the prosecution.

5.    Mr. Bourdon's trial counsel's opening statement did not dispute the State's version of events or raise Bourdon's theory of the case - that the stabbing happened during a struggle, and that Bourdon acted in self-defense - in violation of Bourdon's Sixth Amendment right to the effective assistance of counsel and Sixth Amendment right to have counsel at all critical stages of the case.

6.    Mr. Bourdon's trial counsel did not adequately cross-examine or impeach witnesses, in violation of petitioner's Sixth Amendment right to the effective assistance of counsel, Sixth Amendment right to have counsel at all critical stages of his case, and Sixth Amendment right under the Confrontation Clause, with respect to:

    a.    Dylan, using his prior inconsistent statements;

    b.    Scott, using his prior inconsistent statements;

    c.    Detective Lee, using his prior statements and bail hearing testimony;

    d.    Carlos Blanco, for the purpose of impeaching Dylan's and Scott's trial testimony and adducing exculpatory evidence;

    e.    Beverly Trevino, for the purpose of impeaching Dylan's and Scott's trial testimony and adducing exculpatory evidence; and

    f.    the medical experts who testified for the prosecution, for the purpose of adducing exculpatory evidence.

7.   Mr. Bourdon's trial attorneys did not adequately prepare him to testify when they failed to ensure that he understood the evidence regarding the nature and severity of the victims' wounds, in violation of his Sixth Amendment right to the effective assistance of counsel, and the right to have counsel at all critical stages of the case.

8.   Mr. Bourdon's trial counsel did not present any expert medical testimony to explain the nature of the wounds at issue and rebut evidence regarding the size of the knife and the severity of the victims' wounds, in violation of petitioner's Sixth Amendment right to the effective assistance of counsel, and to have counsel at all critical stages of the case.

9.   Mr. Bourdon's trial counsel did not call the EMTs as witnesses to testify regarding the size of the knife and the severity of the victims' wounds, for purposes of impeaching the victims' testimony, in violation of petitioner's Sixth Amendment right to the effective assistance of counsel, and to have counsel at all critical stages of his case.

10.  Mr. Bourdon's trial counsel did not object to prosecutorial misconduct, in violation of his Sixth Amendment right to the effective assistance of counsel and to have counsel at all critical stages of the case, where:

> a.   the prosecutor's closing argument mischaracterized the evidence and testimony of Beverly Trevino and other witnesses regarding the circumstances of the assault and the nature and severity of the victims' wounds;

> b.   the prosecutor in his closing argument vouched for the credibility of Scott's and Dylan's testimony regarding the assault;

> c.   the prosecutor did not disclose the existence and contents of: (i) the 911 recording, (ii) the EMT report, (iii) Carlos Blanco's June 14, 2011 statement to Detective Gorman, (iv) Beverly Trevino's June 14, 2011 statement, (v) Dylan's June 14, 2011 statements to Detective Anderson, (vi) Scott's June 13 and June 21, 2011 statements, and (vii) Detective Lee's affidavit, all of which included either exculpatory evidence or evidence that could have impeached the

victims' trial testimony, in violation of Mr. Bourdon's due process rights under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

d.    the prosecutor knowingly relied on perjured testimony from Scott, regarding the circumstances of the assault and the severity of the wounds, to obtain a conviction; and

e.    the prosecutor knowingly relied on perjured testimony from Dylan, regarding the circumstances of the assault and the severity of the wounds, to obtain an indictment and to obtain a conviction.

11.    Mr. Bourdon's lead trial counsel, Attorney Joseph Tessier, acted under an actual conflict of interest, and failed to disclose that conflict, which adversely affected his representation of Mr. Bourdon, as Attorney Tessier, at the time he was representing Mr. Bourdon, wanted to be a prosecutor and never disclosed that fact, in violation of Mr. Bourdon's Sixth Amendment right to counsel and Fourteenth Amendment right to due process.

12.    The prosecutor engaged in prosecutorial misconduct, in violation of Mr. Bourdon's Fourteenth Amendment right to due process, in that:

a.    The prosecutor, in concert with Detective Lee, instructed Scott and Dylan to lie and then relied on their perjured testimony regarding the circumstances of the assault and the severity of the wounds to obtain an indictment and a conviction;

b.    The prosecutor did not disclose the existence of (i) the 911 recording, (ii) the EMT report, (iii) Carlos Blanco's June 14, 2011 statement to Detective Gorman, (iv) Beverly Trevino's June 14, 2011 statement, (v) Dylan's June 14, 2011 statements to Detective Anderson, (vi) Scott's June 13 and June 21, 2011 statements, and (vii) Detective Lee's affidavit, which included exculpatory statements and evidence that could impeach the victims' trial testimony, in violation of Mr. Bourdon's due process rights under Brady and its progeny; and

c.    The prosecutor, Attorney Lafrance, in an effort to advance her election campaign to become the county

attorney, conspired with Detective Lee to obtain a
grand jury indictment upon fabricated evidence that
Scott suffered a serious bodily injury or stomach
bleed.

13.   In violation of Mr. Bourdon's Sixth Amendment right to
a fair trial and Fourteenth Amendment right to due process,
Mr. Bourdon's lead trial counsel, Attorney Tessier, acting
in a conspiracy with the prosecutor, for the purpose of
advancing the personal, professional, and political goals
of both himself and the prosecutor:

    a.   fabricated evidence regarding the existence of a
stomach bleed;

    b.   failed to impeach Scott and Dylan;

    c.   failed to obtain expert medical testimony that
would have provided exculpatory and impeaching
evidence;

    d.   failed to adequately cross-examine witnesses at
trial;

    e.   failed to object when the prosecutor elicited
perjured testimony from Scott and Dylan;

    f.   failed to call the EMTs as witnesses regarding
what Scott said to them about the knife;

    g.   failed to object to the prosecutor's use of the
EMT report as the basis for Mr. Bourdon's indictment;

    h.   failed to seek dismissal of the indictments for
first degree assault and attempted murder;

    i.   suppressed or otherwise kept the 911 recordings
from Mr. Bourdon and the jury;

    j.   suppressed or otherwise kept the EMTs' report
from Mr. Bourdon and the jury;

    k.   suppressed or otherwise kept Mr. Bourdon's
booking photo from the jury;

    l.   suppressed or otherwise kept Officer Yeomelakis's
report from Mr. Bourdon and the jury;

      m.    failed to object to the prosecutor's opening and closing arguments, particularly regarding Beverly Trevino's testimony;

      n.    failed to object to other instances of prosecutorial misconduct; and

      o.    failed to vigorously dispute the prosecutor's version of events presented to the jury in the prosecutor's opening and closing arguments.

14.   In violation of Mr. Bourdon's Fourteenth Amendment right to due process, the trial court failed to declare a mistrial sua sponte when the prosecutor argued facts not in evidence regarding Beverly Trevino's testimony.

15.   Mr. Bourdon's conviction was obtained in violation of the Fourteenth Amendment Equal Protection Clause.

16.   Mr. Bourdon's arrest was not supported by probable cause, and a search of his home was conducted pursuant to a search warrant that was based on the victims' lies and not signed by any judicial officer, in violation of Mr. Bourdon's rights under the Fourth Amendment.

17.   Mr. Bourdon's conviction was obtained in violation of the Fifth Amendment.

18.   Mr. Bourdon's conviction was obtained in violation of the N.H. Constitution.


B.   Claim 16

In Claim 16, Mr. Bourdon asserts violations of his Fourth Amendment rights relating to the search of his home and his arrest.  "An illegal arrest not resulting in the seizure of evidence does not void a subsequent conviction."  Palmigiano v. Houle, 618 F.2d 877, 878 n.1 (1st Cir. 1980).

To the extent Mr. Bourdon is asserting that evidence seized in violation of his Fourth Amendment rights was used to obtain his conviction, that claim is not cognizable as a ground for obtaining relief under section 2254.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (citation omitted); see also Sanna v. Dipaolo, 265 F.3d 1, 8-10 (1st Cir. 2001) (Stone stands for proposition that federal courts cannot generally review Fourth Amendment claims in a § 2254 petition unless the state has failed to provide a "full and fair" opportunity to litigate that claim, or there has been "an irretrievable breakdown in the process provided by the state" (citing Stone, 428 U.S. at 494)).  Mr. Bourdon has not asserted facts suggesting that any exception to Stone applies in this case.  Accordingly, the district judge should dismiss Claim 16.

C.    Claims 17 and 18

In Claims 17 and 18, Mr. Bourdon asserts that his state court conviction and sentence violated his rights under the Fifth Amendment and the State Constitution.  The Fifth Amendment Due Process Clause restrains the authority of federal agents,

but does not generally restrain state officials' conduct in criminal proceedings in state courts.  Moreover, Mr. Bourdon's petition does not otherwise assert any facially valid claim arising under any part of the Fifth Amendment that does apply to the States.  Cf. Campiti v. Matesanz, 186 F. Supp. 2d 29, 53 (D. Mass. 2002) (since petitioner "was indicted, tried, and convicted in state court, [his] arguments under the Grand Jury Clause of the Fifth Amendment must be rejected," as "the Supreme Court 'has never held that federal concepts of a 'grand jury,' . . . are obligatory for the States'" (citations omitted)), aff'd, 333 F.3d 317 (1st Cir. 2003).  Accordingly, the district judge should dismiss his claims arising under the Fifth Amendment (Claim 17).

Mr. Bourdon's claimed violation of his rights under the State Constitution, summarized in Claim 18, fail to provide cognizable grounds for granting federal habeas relief.  This court's jurisdiction under 28 U.S.C. §§ 2241 and 2254 extends to inmates whose detention violates their federal rights.  Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("'federal habeas corpus relief does not lie for errors of state law'" (citation omitted)).  Accordingly, the district judge should dismiss Mr. Bourdon's claims arising under the New Hampshire Constitution (Claim 18).

D.    Remaining Claims (Claims 1-15)

It is not clear on the face of the petition that the remaining claims (Claims 1-15) are meritless.  Accordingly, in the Order issued this date, the court directs service of the petition and its addenda upon the respondent Warden, who may move for summary judgment or to dismiss any or all remaining claims in the petition on any appropriate ground.

III. Motion for Bail

Mr. Bourdon has moved to be released on his own recognizance while this petition remains pending.  A state inmate generally must show exceptional circumstances before the federal court may release him on bail while a § 2254 petition is pending.  Pelletier v. Rhode Island, No. CIV.A. 07-186 S, 2008 U.S. Dist. LEXIS 58201, at *5, 2008 WL 2977790, at *2 (D.R.I. July 18, 2008), R&R adopted, 2008 U.S. Dist. LEXIS 64235, 2008 WL 3887623 (D.R.I. Aug. 19, 2008); Bader v. Coplan, No. 02-cv-508-JD, 2003 DNH 15, 2003 U.S. Dist. LEXIS 875, at *12, 2003 WL 163171, at *4 (D.N.H. Jan. 23, 2003).  In the absence of exceptional circumstances, "the court will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, but a clear, and readily

evident, case on the facts." Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972) (citation and footnote omitted).

Mr. Bourdon has not shown that there are extraordinary circumstances in his case warranting his release on bail.[1]  Mr. Bourdon's sentence is lengthy, and much of it remains to be served.  The evidence upon which he was convicted included the testimony of the victims, which was generally corroborated by physical evidence, his own inculpatory statement to the police, the testimony of bystanders, the testimony of treating physicians, and medical evidence.  He argues that but for alleged violations of his federal constitutional rights, which also form the basis for claims he has asserted in this action, the jury would have had evidence before it that the jury could have used in weighing the victims' credibility and reinterpreting the medical evidence.  The evidence cited in his motion (Doc. No. 11) does not amount to the kind of showing of factual innocence here that could be characterized as "clear, and readily evident." Glynn, 470 F.2d at 98.  Accordingly, the district judge should deny Mr. Bourdon's motion for bail (Doc. No. 11).

---

[1]There are active cases of COVID-19 at NCF.  See N.H. Dep't of Corr., COVID-19 Testing Information, available at https://www.covid19.nhdoc.nh.gov/covid-19-testing-information (last accessed Jan. 7, 2021).  Mr. Bourdon has made no argument regarding COVID-19 as a ground for seeking bail; this court does not address that issue here.

## **Conclusion**

For the foregoing reasons, the district judge should dismiss Claims 16, 17, and 18, and deny Mr. Bourdon's motion for release on personal recognizance bail pending the disposition of his petition (Doc. No. 11).

_____
Andrea K. Johnstone
United States Magistrate Judge

January 8, 2021

cc:  Ronald Bourdon, pro se

17