UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ronald Bourdon

    v.                          Civil No. 19-cv-258-SE
                                    Opinion No. 2022 DNH 095
Warden, Northern New Hampshire
Correctional Facility

O R D E R

Ronald Bourdon, who is proceeding pro se, petitioned the
court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.
After a jury trial in Hillsborough County (New Hampshire)
Superior Court, Bourdon was convicted of attempted murder, first
degree assault, simple assault, criminal restraint, and criminal
threatening. In his § 2254 petition, his second such petition
filed in this court, Bourdon challenged the validity of his
convictions and sentence. The court construed the petition to
raise 15 viable claims, including that Bourdon's convictions
were obtained in violation of his constitutional rights due to
insufficient evidence, ineffective assistance of counsel,
prosecutorial misconduct, and a violation of his right to equal
protection.[1] The warden moves for summary judgment on all of

---

[1] The court construed Bourdon's petition to raise 18 claims
but dismissed three of them on preliminary review. See doc. nos.
15, 19.

Bourdon's claims (doc no. 32), and Bourdon objects. For the reasons that follow, the court grants the warden's motion.

## Standard of Review

The appropriate standard of review for claims brought under the Antiterrorism and Effective Death Penalty Act of 1996, § 2254, depends on whether a claim was "adjudicated on the merits in State Court proceedings." § 2254(d). If a claim was adjudicated on the merits, a court should not grant an application for habeas corpus unless the state court decision was either (1) contrary to or involved an unreasonable application of clearly established federal law or (2) based on an unreasonable determination of the facts. Id.

In contrast, where a state court decision does not adjudicate a petitioner's federal claims on the merits, the district court does not, and could not, employ a deferential standard of review. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (noting that a court considering a § 2254 petition "can hardly defer to the state court on an issue that the state court did not address"). Instead, the district court "reviews federal claims raised but unadjudicated in state court de novo." Hodge v. Mendonsa, 739 F.3d 34, 41 (1st Cir. 2013).

In addition, the court's review of claims asserted in a § 2254 petition is subject to two limitations. First, a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court. § 2254(b)(1). "Second, a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 137 S. Ct. 2058, 2064 (2017). But a "state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." Id. at 2064-65 (quotation omitted).

Bourdon has challenged his convictions and sentence several times in various courts. In the warden's memorandum supporting his summary judgment motion, he devotes substantial time to discussing whether the court should consider each of Bourdon's claims and, if so, the appropriate standard of review the court should employ. The warden also addresses each of Bourdon's claims on the merits.

For the reasons discussed below, the warden is entitled to summary judgment on all of Bourdon's claims under the

petitioner-friendly de novo standard. Therefore, in the interest
of judicial economy, the court will forego analyzing whether
each of Bourdon's claims was procedurally defaulted, exhausted,
raised but not addressed, or adjudicated on the merits in state
court. Instead, the court will assume for purposes of this order
that the de novo standard of review applies to each of Bourdon's
claims.

With that framework established, the court turns to the
warden's motion for summary judgment. Summary judgment is
appropriate when the moving party shows that "there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
A genuine dispute is "one that must be decided at trial because
the evidence, viewed in the light most flattering to the
nonmovant, would permit a rational factfinder to resolve the
issue in favor of either party." Joseph v. Lincare, Inc., 989
F.3d 147, 157 (1st Cir. 2021) (quotation omitted). "Facts are
material when they have the potential to affect the outcome of
the suit under the applicable law." Id. (quotation omitted). In
deciding a motion for summary judgment, the court draws all
reasonable factual inferences in favor of the nonmovant. Kenney
v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

Background[2]

## I. Factual Background

Bourdon's convictions arose from an incident at his home in June 2011. A friend, Robert Derome, was helping him with a project at the house. Derome's teenaged son and stepson, Dylan Fitzgerald and Scott Dunlap, were also helping.[3] At the end of the work day, Fitzgerald, Dunlap, Bourdon, and Derome were sitting in Bourdon's kitchen. Derome and Bourdon were drinking alcohol, and the boys were drinking soda.

Bourdon accused Dunlap and Fitzgerald of stealing his laptop computers and became angry. According to Fitzgerald's and Dunlap's trial testimony, Bourdon threatened to punch them and to call the police. When the boys told him that they had not taken the laptops, Bourdon said that one of them would die

---

[2] The facts in this section are taken from the trial transcript and other documents in the record, as well as orders issued in other cases in which Bourdon challenged his convictions. All facts are construed in the light most favorable to Bourdon. Unless otherwise noted, the facts in this section are undisputed.

[3] Because Fitzgerald and Dunlap were teenagers at the time of the incident, they were previously referred to by their initials rather than their names. Their names were used during Bourdon's criminal trial, however, and they are no longer minors. Therefore, the court will use their full names in this order.

before leaving the house. He also said that he would not let them leave without a knife in their chests.

Fitzgerald and Dunlap testified that Bourdon went to the kitchen counter, came back with a knife, ran at Dunlap, and stabbed him in his right side. Fitzgerald tried to help his brother and was cut twice on the arm in the process. While Bourdon held Dunlap by the shirt, Fitzgerald pulled Dunlap to the door to get away from Bourdon, and Dunlap's shirt was torn in the struggle. The boys escaped from the house and ran to the street. Carlos Blanco, Bourdon's neighbor, called the police while others tried to help Dunlap and Fitzgerald. Blanco, as well as another one of Bourdon's neighbors, Beverly Trevino, testified at trial.

Nashua Police officers responded to Bourdon's home. They later testified as to what they found. Fitzgerald and Dunlap were lying in the street, both wounded and in distress. Dunlap's wound appeared to be more serious. Fitzgerald and Dunlap warned the officers that Bourdon might have a gun.

The officers saw that Bourdon was inside the house. They tried to get him to come out, but he refused. The officers set up an entry team to go into the house with shields, guns, and a Taser. The team entered the house to apprehend Bourdon. Because Bourdon continued to refuse to cooperate with the officers, an

officer deployed his Taser, which knocked Bourdon to the ground.
He was handcuffed and taken outside.

Bourdon's trial testimony offered a different version of
events. He said that when he went into his house from the yard
where he had been working, the boys were in the house, and he
heard them say "here he comes." He testified that he believed
the boys stole two of his laptops.

Bourdon testified that he told the boys he would call the
police and reached for the telephone. He said that Dunlap took a
knife off the table and threatened him with it. Bourdon then
grabbed Dunlap's wrist, and they began to struggle. Fitzgerald
joined the struggle to help his brother. Although Bourdon was
unclear about the details, he testified that during the
struggle, Dunlap fell on the knife or stabbed himself and also
cut his brother. Bourdon testified that the boys left the house,
the police responded, and he cooperated with the police.

Fitzgerald and Dunlap were taken to Southern New Hampshire
Medical Center and were treated in the emergency department.
Fitzgerald received stiches for his wounds and was released. Dr.
Peter Row and Dr. Kenneth Howe treated Dunlap in the emergency
department and testified at Bourdon's trial. Dr. Howe testified
that Dunlap had a stab wound in his right flank area—between
Dunlap's right hip and the lower part of his right rib cage—and
was sufficiently stable to have a CT scan. The CT scan showed a

deep wound and internal bleeding that raised a concern about internal injuries. The doctors decided to have Dunlap transferred to a level one trauma center. Dunlap was air-lifted to Brigham and Women's Hospital ("Brigham") in Boston.

Dr. Jonathan Gates, a vascular and trauma surgeon at Brigham, met Dunlap in the emergency department. Dr. Gates examined Dunlap, reviewed the CT scan results, and determined that "he had suffered a stab wound to the right flank, . . . [and] that he had a significant amount of bleeding [in] the retroperitoneal area, which is part of the abdomen." Trial Tr. at 164. The knife wound was two inches long and at least three to four inches deep. Dr. Gates decided that surgery was needed to determine the extent of internal injuries and to repair the damage to the abdominal muscles caused by the knife.

During surgery, Dr. Gates found a large hematoma, or, as he described it at trial, a bleed, in the musculature of the retroperitoneal area, which is the back of the abdomen. The hematoma pushed the organs in the abdomen forward. There was no injury to internal organs or the major blood vessel in the area. Dr. Gates addressed the internal bleeding during surgery and repaired the damaged muscles.

Dunlap testified that he remained in the hospital for five days. Once home, he was in bed for the first month and then continued to recover from the injury for another two months.

8

II. <u>Procedural Background</u>

    A.    <u>State Court Proceedings</u>

In August 2011, Bourdon was indicted on charges of attempted murder, first degree assault, criminal restraint, criminal threatening, simple assault, and felon in possession of a firearm arising from the stabbing incident at his house. The indictment for first degree assault stated that Bourdon stabbed Dunlap "in the abdominal area with a knife, causing a retroperitoneal hematoma ('stomach bleed')." Doc. no. 4-1 at 13.

Bourdon was initially represented by Michael Davidow and Eleftheria Keans from the New Hampshire Public Defender's Office. Early in the proceedings, Davidow was replaced by Joseph Tessier, also from the New Hampshire Public Defender's Office. Bourdon's case was tried before a jury in September 2012 in Hillsborough County Superior Court for the Southern District. The felon-in-possession charge was dismissed during the trial. Bourdon was acquitted of one criminal restraint charge and was convicted of all other charges. He was sentenced to 22½ to 50 years in state prison.

Keans filed a notice of appeal on Bourdon's behalf on January 11, 2013, challenging the trial judge's decision to admit Bourdon's booking photograph and failure to dismiss some of the charges. In May 2013, while the appeal was pending,

Bourdon filed a pro se motion for a new trial in the superior court alleging ineffective assistance of counsel. The New Hampshire Supreme Court stayed Bourdon's direct appeal pending resolution of the motion for a new trial.

The superior court appointed Theodore Barnes to represent Bourdon on his motion for a new trial. Barnes filed an amended motion for a new trial on Bourdon's behalf. The superior court held an evidentiary hearing on April 14, 2014. Both Tessier and Keans testified. The court denied the motion for a new trial on July 16, 2014, and subsequently denied Bourdon's motion for reconsideration. Bourdon filed a notice of appeal, which the New Hampshire Supreme Court declined to accept in October 2014.

In April 2015, Bourdon, proceeding pro se, filed a second motion for a new trial in the superior court, arguing that Barnes had provided ineffective assistance of counsel with regard to his prior motion. The state responded that the new motion was a rehash of arguments made in support of the prior motion for a new trial. The court denied the motion for the reasons provided in the state's objection. Bourdon filed a notice of appeal, which raised additional claims, and the New Hampshire Supreme Court declined to accept the appeal in July 2015.

One month prior, in June 2015, Bourdon filed a habeas corpus petition in the Coos County Superior Court, again

10

alleging that Barnes had provided him with ineffective assistance of counsel. The superior court denied his petition in August 2015. Bourdon filed a notice of discretionary appeal in September 2015. The New Hampshire Supreme Court appears to have declined to accept the appeal, though a copy of the decision does not appear in the record.

After the superior court adjudicated Bourdon's requests for relief, the New Hampshire Supreme Court lifted the stay on Bourdon's direct appeal of his conviction. David Rothstein from the New Hampshire Public Defender's Office represented Bourdon on that appeal. On August 28, 2015, the New Hampshire Supreme Court affirmed Bourdon's conviction on all grounds. State v. Bourdon, No. 2013-0031, 2015 WL 11181919 (N.H. Aug. 28, 2015).

In July 2018, Bourdon again moved for a new trial in the superior court, based on an EMT report of the treatment provided to Fitzgerald and Dunlap. Bourdon argued that the EMT report was new evidence and was critical to his defense because it contained statements made by Dunlap that could have been used as impeachment evidence. The state objected on the grounds that the EMT report was not new evidence and was not material.[4] The court

---

[4] In his July 2018 motion for a new trial, Bourdon asserted that his defense counsel did not receive the EMT report prior to his trial. However, he also stated in that motion that his counsel did have a copy of the EMT report at trial but that it was "hidden in between the pages" of other documents that the state provided. Doc no. 41-9 at 6.

denied the motion on the grounds set forth in the state's objection.

In August 2018, Bourdon moved to compel disclosure of the 911 call from the day of the stabbing, arguing that the call contained evidence that could have impeached Dunlap and Fitzgerald. The superior court denied the motion and also denied Bourdon's motion for reconsideration. Bourdon filed another notice of appeal with the New Hampshire Supreme Court, and the court declined to accept the appeal.

B.    Federal Court Proceedings

Concurrently with his efforts in state court, Bourdon filed an action in this court. On April 20, 2015, he filed a petition pursuant to 28 U.S.C. § 2254. Bourdon v. Goings, 15-cv-138-LM. The court stayed that case to give Bourdon an opportunity to exhaust his claims in state court and to complete the state court proceedings. Bourdon moved to be released on bail or personal recognizance while his petition was pending. The court denied his motion.

The court lifted the stay in May 2016, and the Office of the Attorney General was served. The court granted the respondent's motion to dismiss Claim 13,[5] which asserted

---

[5] The court construed Bourdon's petition in that case to allege 13 claims.

ineffective assistance of counsel in the post-conviction proceedings regarding the motion for a new trial. In response to cross motions for summary judgment, the court concluded that the petition contained exhausted and unexhausted claims. The court gave Bourdon an opportunity to file an amended petition without unexhausted claims, took the motions for summary judgment under advisement, and put Bourdon on notice that failure to file an amended petition would result in dismissal of his case. When Bourdon failed to file an amended petition, the court dismissed the case without prejudice and denied the motions for summary judgment as moot. The court declined to issue a certificate of appealability and entered judgment on August 16, 2017.

Bourdon appealed the court's judgment. In a decision issued in June 2018, the First Circuit concluded that Bourdon had not made the necessary showing for a certificate of appealability. The First Circuit terminated the appeal.

In October 2018, Bourdon moved to reopen his federal habeas case and moved to stay. The court denied both motions. Bourdon's motion to reopen was construed to challenge the court's decision on Claim 13 and to argue actual innocence to overcome his failure to exhaust his claims in state court. The court found no error in dismissing Claim 13 and also concluded that Bourdon had not presented credible evidence of actual innocence. Bourdon v.

Warden, No. 15-cv-138-LM, 2018 WL 6069100 (D.N.H. Nov. 20, 2018).

Bourdon filed a second petition under § 2254 in this court, which initiated this case. On preliminary review, the magistrate judge identified 18 claims with additional subparts but recommended that three claims be dismissed. Doc. no. 15. The court approved the magistrate judge's recommendation. Doc. no. 19. The identified claims that were served on the warden are as follows:

1.   Bourdon's convictions for attempted murder and first-degree assault were not supported by sufficient evidence, in violation of his right to due process under the Fourteenth Amendment, as there was insufficient evidence before the jury of serious bodily injury.

2.   Bourdon's trial attorneys failed to investigate issues relating to Bourdon's case, and were otherwise unprepared for trial, in violation of Bourdon's Sixth Amendment right to counsel at all critical stages of the prosecution, and in violation of the Sixth Amendment right to the effective assistance of counsel, in that they:

a.   did not obtain or review the contents of the bail hearing transcript;

b.   did not interview key witnesses, including the first responders ("EMTs");

c.   did not obtain or review a recording of the 911 call;

d.   did not consult with medical experts or otherwise adequately investigate issues regarding the nature and severity of the victims' wounds; and

14

     e.   did not investigate the blood drop evidence and crime scene photos for purposes of impeaching the victims' trial testimony.

3.   Bourdon's trial counsel did not challenge the sufficiency of the charging documents, which inaccurately characterized Scott's abdominal wound as a serious injury and a "stomach bleed," amounting to a denial of counsel at a critical stage of the prosecution and ineffective assistance of counsel, in violation of Bourdon's Sixth Amendment right to counsel.

4.   Bourdon's trial counsel did not object to or effectively rebut the prosecutor's opening statement, which mischaracterized the evidence of the extent and severity of the victims' wounds, in violation of Bourdon's Sixth Amendment right to the effective assistance of counsel and to have counsel at all critical stages of the prosecution.

5.   Bourdon's trial counsel's opening statement did not dispute the State's version of events or raise Bourdon's theory of the case - that the stabbing happened during a struggle, and that Bourdon acted in self-defense - in violation of Bourdon's Sixth Amendment right to the effective assistance of counsel and Sixth Amendment right to have counsel at all critical stages of the case.

6.   Bourdon's trial counsel did not adequately cross-examine or impeach witnesses, in violation of petitioner's Sixth Amendment right to the effective assistance of counsel, Sixth Amendment right to have counsel at all critical stages of his case, and Sixth Amendment right under the Confrontation Clause, with respect to:

     a.   Fitzgerald, using his prior inconsistent statements;

     b.   Dunlap, using his prior inconsistent statements;

    c.    Detective Lee, using his prior statements and bail hearing testimony;

    d.    Carlos Blanco, for the purpose of impeaching Dylan's and Scott's trial testimony and adducing exculpatory evidence;

    e.    Beverly Trevino, for the purpose of impeaching Dylan's and Scott's trial testimony and adducing exculpatory evidence; and

    f.    the medical experts who testified for the prosecution, for the purpose of adducing exculpatory evidence.

7.    Bourdon's trial attorneys did not adequately prepare him to testify when they failed to ensure that he understood the evidence regarding the nature and severity of the victims' wounds, in violation of his Sixth Amendment right to the effective assistance of counsel, and the right to have counsel at all critical stages of the case.

8.    Bourdon's trial counsel did not present any expert medical testimony to explain the nature of the wounds at issue and rebut evidence regarding the size of the knife and the severity of the victims' wounds, in violation of petitioner's Sixth Amendment right to the effective assistance of counsel, and to have counsel at all critical stages of the case.

9.    Bourdon's trial counsel did not call the EMTs as witnesses to testify regarding the size of the knife and the severity of the victims' wounds, for purposes of impeaching the victims' testimony, in violation of petitioner's Sixth Amendment right to the effective assistance of counsel, and to have counsel at all critical stages of his case.

10.    Bourdon's trial counsel did not object to prosecutorial misconduct, in violation of his Sixth Amendment right to the effective assistance of counsel and to have counsel at all critical stages of the case, where:

16

a.   the prosecutor's closing argument
     mischaracterized the evidence and testimony
     of Beverly Trevino and other witnesses
     regarding the circumstances of the assault
     and the nature and severity of the victims'
     wounds;

b.   the prosecutor in his closing argument
     vouched for the credibility of Dunlap's and
     Fitzgerald's testimony regarding the
     assault;

c.   the prosecutor did not disclose the
     existence and contents of: (i) the 911
     recording, (ii) the EMT report, (iii) Carlos
     Blanco's June 14, 2011 statement to
     Detective Gorman, (iv) Beverly Trevino's
     June 14, 2011 statement, (v) Fitzgerald's
     June 14, 2011 statements to Detective
     Anderson, (vi) Dunlap's June 13 and June 21,
     2011 statements, and (vii) Detective Lee's
     affidavit, all of which included either
     exculpatory evidence or evidence that could
     have impeached the victims' trial testimony,
     in violation of Mr. Bourdon's due process
     rights under Brady v. Maryland, 373 U.S. 83
     (1963), and its progeny.

d.   the prosecutor knowingly relied on perjured
     testimony from Dunlap, regarding the
     circumstances of the assault and the
     severity of the wounds, to obtain a
     conviction; and

e.   the prosecutor knowingly relied on perjured
     testimony from Fitzgerald, regarding the
     circumstances of the assault and the
     severity of the wounds, to obtain an
     indictment and to obtain a conviction.

11.  Bourdon's lead trial counsel, Joseph Tessier,
     acted under an actual conflict of interest, and
     failed to disclose that conflict, which adversely
     affected his representation of Bourdon, as
     Tessier, at the time he was representing Bourdon,
     wanted to be a prosecutor and never disclosed

that fact, in violation of Bourdon's Sixth Amendment right to counsel and Fourteenth Amendment right to due process.

12. The prosecutor engaged in prosecutorial misconduct, in violation of Bourdon's Fourteenth Amendment right to due process, in that:

    a. The prosecutor, in concert with Detective Lee, instructed Dunlap and Fitzgerald to lie and then relied on their perjured testimony regarding the circumstances of the assault and the severity of the wounds to obtain an indictment and a conviction;

    b. The prosecutor did not disclose the existence of (i) the 911 recording, (ii) the EMT report, (iii) Carlos Blanco's June 14, 2011 statement to Detective Gorman, (iv) Beverly Trevino's June 14, 2011 statement, (v) Dylan's June 14, 2011 statements to Detective Anderson, (vi) Scott's June 13 and June 21, 2011 statements, and (vii) Detective Lee's affidavit, which included exculpatory statements and evidence that could impeach the victims' trial testimony, in violation of Bourdon's due process rights under Brady and its progeny; and

    c. The prosecutor in an effort to advance her election campaign to become the county attorney, conspired with Detective Lee to obtain a grand jury indictment upon fabricated evidence that Scott suffered a serious bodily injury or stomach bleed.

13. In violation of Bourdon's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process, Bourdon's lead trial counsel, Tessier, acting in a conspiracy with the prosecutor, for the purpose of advancing the personal, professional, and political goals of both himself and the prosecutor:

    a. fabricated evidence regarding the existence of a stomach bleed;

b.    failed to impeach Fitzgerald and Dunlap;

c.    failed to obtain expert medical testimony
      that would have provided exculpatory and
      impeaching evidence;

d.    failed to adequately cross-examine witnesses
      at trial;

e.    failed to object when the prosecutor
      elicited perjured testimony from Fitzgerald
      and Dunlap;

f.    failed to call the EMTs as witnesses
      regarding what Scott said to them about the
      knife;

g.    failed to object to the prosecutor's use of
      the EMT report as the basis for Bourdon's
      indictment;

h.    failed to seek dismissal of the indictments
      for first degree assault and attempted
      murder;

i.    suppressed or otherwise kept the 911
      recordings from Bourdon and the jury;

j.    suppressed or otherwise kept the EMTs'
      report from Bourdon and the jury;

k.    suppressed or otherwise kept Bourdon's
      booking photo from the jury;

l.    suppressed or otherwise kept Officer
      Yeomelakis's report from Bourdon and the
      jury;

m.    failed to object to the prosecutor's opening
      and closing arguments, particularly
      regarding Beverly Trevino's testimony;

n.    failed to object to other instances of
      prosecutorial misconduct; and

o.    failed to vigorously dispute the
      prosecutor's version of events presented to

the jury in the prosecutor's opening and
closing arguments.

14.   In violation of Bourdon's Fourteenth Amendment
right to due process, the trial court failed to
declare a mistrial sua sponte when the prosecutor
argued facts not in evidence regarding Beverly
Trevino's testimony.

15.   Bourdon's conviction was obtained in violation of
the Fourteenth Amendment Equal Protection Clause.

Doc. no. 15 at 7-12.


## Discussion

The warden moves for summary judgment on all 15 claims.

Bourdon objects. The court addresses each claim in turn.


## I.   Sufficiency of the Evidence (Claim 1)

Bourdon alleges that his due process rights were violated

because the evidence adduced at trial was not sufficient to

prove attempted murder and first degree assault beyond a

reasonable doubt. With regard to the assault charge, Bourdon

contends specifically that the injuries Dunlap sustained were

not serious enough to support the conviction.

Under the due process clause, "no person shall be made to

suffer the onus of a criminal conviction except upon sufficient

proof—defined as evidence necessary to convince a trier of fact

beyond a reasonable doubt of the existence of every element of

the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979). In

applying that test, the court views the evidence in the light
most favorable to the prosecution to decide whether "any
rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt." Id. at 319; accord
Musacchio v. United States, 577 U.S. 237, 243 (2016). The
court's review "does not intrude on the jury's role to resolve
conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts."
Musacchio, 577 U.S. at 243 (quotation omitted).

### A.   Attempted Murder

Under New Hampshire law, to "prove attempted murder, the
State is required to submit sufficient evidence that a person
took a substantial step toward killing another with the purpose
of accomplishing the killing." State v. Karasi, 170 N.H. 543,
546 (2018) (quotation omitted) (citing RSA § 626:2, II(a) & RSA
§ 629:1, I). Bourdon was charged with and convicted of attempted
murder with regard to Dunlap.

Viewed in the light most favorable to Bourdon, the record
demonstrates that ample evidence was presented at trial to allow
a rational trier of fact to convict Bourdon of attempted murder.
Fitzgerald and Dunlap testified that Bourdon threatened to kill
them. They also testified that Bourdon said that they would not
leave his house without a knife in their chests. The jury heard

21

testimony that Bourdon then got a knife and ran at Dunlap,
stabbing him in the right side.

    A rational trier of fact could have found that this
evidence established beyond a reasonable doubt that Bourdon
acted with the purpose to kill Dunlap and took actions
constituting a substantial step toward achieving that goal.
Although Bourdon testified that different circumstances led to
the knife wound and to the treatment that Dunlap received, the
jury did not credit his account. The evidence of attempted
murder is sufficient to sustain Bourdon's conviction.

    Although not clear from his petition, Bourdon also may
allege that Dunlap's wound was not a "serious bodily injury" and
was therefore not severe enough to support a conviction for
attempted murder. That contention is misplaced. As the New
Hampshire Supreme Court stated when affirming Bourdon's
conviction, serious bodily injury is not an element of the
offense of attempted murder. Bourdon, 2015 WL 11181919, at *2;
see Karasi, 170 N.H. at 546.


        B.   First Degree Assault

    A person is guilty of first degree assault under New
Hampshire law if he purposely causes serious bodily injury to
another. RSA § 631:1, I(a). New Hampshire law defines serious
bodily injury as "any harm to the body which causes severe,

permanent or protracted loss of or impairment to the health or of the function of any part of the body." RSA § 625:11, VI.

Despite Bourdon's attempts to minimize Dunlap's wound, there was significant evidence offered at trial that would allow the jury to conclude beyond a reasonable doubt that Dunlap suffered a serious bodily injury. The state presented the following evidence: Dunlap's wound from the knife was two inches long and at least three to four inches deep. He was transported to Southern New Hampshire Medical Center where treating doctors thought the injury could be life threatening. He was then airlifted to Brigham. Once there, Dr. Gates decided that the risks of internal bleeding and injury required surgery, which was performed. As part of the surgery, Dr. Gates addressed Dunlap's internal bleeding and repaired the injury to his abdominal muscle caused by the knife. Dunlap remained in the hospital for five days and required three months to recover from the injury.

Although, as discussed further below, Bourdon argues that the prosecutor improperly led the jury to believe that Dunlap's wound was more severe than the evidence suggested, there was ample direct evidence from which a rational factfinder could conclude that Dunlap suffered a serious bodily injury. The nature of Dunlap's wound, based on the evidence adduced at trial, was far more significant than injuries the New Hampshire

Supreme Court has held sufficient to constitute serious bodily injury. See State v. Dorrance, 165 N.H. 162, 164-65 (2013) (holding that evidence that the victim suffered from blurry vision for weeks after being punched by the defendant was sufficient for the jury to conclude that victim had suffered serious bodily injury); State v. Kiluk, 120 N.H. 1, 4 (1980) (holding that a "wound requiring sutures and a scratched eyeball resulting in blurred vision certainly qualify as serious bodily injury").

For these reasons, the warden is entitled to summary judgment on Claim 1.

II.   Ineffective Assistance of Counsel (Claims 2-11)

Bourdon contends that his trial counsel, Tessier and Keans, were ineffective in their representation of him and alleges a multitude of errors and omissions. Specifically, Bourdon alleges in various claims that his trial counsel provided deficient representation by failing to prepare adequately for trial, to challenge the indictments for referring to a "stomach bleed," to challenge the prosecutor's opening statement, to make a sufficient opening statement on his behalf, to cross-examine witnesses adequately at trial, to call necessary witnesses, and to object to alleged prosecutorial misconduct. For the reasons discussed below, none of these perceived missteps establishes a

claim for ineffective assistance of counsel.

"To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him." Andrus v. Texas, 140 S. Ct. 1875, 1881 (2020). To be constitutionally deficient, counsel's representation must be shown to have been "below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.

Bourdon raises ineffective assistance of counsel in Claims 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11. The court addresses each claim in turn.

A. Trial Preparation (Claim 2)

Bourdon alleges that his trial counsel failed to prepare meaningfully for his trial. He alleges that his counsel did not: (1) obtain or review the transcript of his bail hearing, (2) interview the EMTs who arrived at his house after the incident

with Fitzgerald and Dunlap, (3) obtain or review the 911 call
pertaining to the incident, (4) consult with medical experts
about or otherwise investigate the severity of Dunlap's wound,
or (5) investigate the amount of blood at the crime scene for
purposes of impeaching Fitzgerald, Dunlap, or both. For the
reasons discussed in this section, the record shows that the
omissions Bourdon alleges do not constitute deficient
representation. Even if they did, viewing the evidence in the
light most favorable to Bourdon, there is no reasonable
probability that, but for his attorneys' alleged errors, the
result of his trial would have been different.

### 1. Bail Hearing Transcript

Detective Dennis Lee, who investigated the incident at
Bourdon's house, was the only witness who testified at the bail
hearing. Bourdon contends that the transcript of that hearing
would have provided impeachment evidence against Dunlap, because
Detective Lee testified that Dunlap "had been stabbed during a
struggle," contradicting Dunlap's "trial testimony that he was
sitting on a milk crate when stabbed." Doc. no. 41 at 5. He also
argues that the transcript shows that Detective Lee obtained a
warrant to search his house illegally. Bourdon claims that the
warrant application relies on the responding officers'
statements (rather than Detective Lee's) and that Detective Lee

intentionally did not state in his application that Dunlap was stabbed "during a struggle." Doc. no. 41 at 34.

Viewing the evidence in the light most favorable to Bourdon, the warden is entitled to summary judgment on the portion of Claim 2 based on the bail hearing transcript. Even assuming that his counsel's failure to order the transcript or challenge the warrant constituted deficient representation, Bourdon suffered no prejudice.

The jury heard the testimony of many witnesses about the stabbings, including the victims, Detective Lee, and Bourdon himself. Bourdon does not explain how the minor discrepancies he cites would have impacted the jury's verdict. Nor do Bourdon's complaints about Detective Lee's application for the search warrant undermine the legitimacy of the warrant. Therefore, counsel's failure to obtain, review, and use the bail hearing transcript does not constitute ineffective assistance of counsel.

### 2.  Interview with EMTs

Many of Bourdon's claims focus on his contention that Dunlap's wound was not as severe as Dunlap or his treating doctors described at trial. According to Bourdon, the EMTs would have provided impeachment evidence against Dunlap. Bourdon asserts that the EMT report shows that Dunlap lied to the EMTs

as they were treating his wound in the aftermath of the stabbing by making false statements about the size of the knife and depth of the wound. Bourdon also notes that the EMT report does not mention a "stomach bleed," a fact which he contends is exculpatory.[6]

Assuming that his counsel should have interviewed the EMTs and that the interview would have been helpful to Bourdon, which is not clear from the record or Bourdon's filings, Bourdon suffered no prejudice by the lack of such a meeting. Given the evidence adduced at trial, including the treating doctors' testimony about the severity of the wounds, any information gleaned from the EMTs would not have changed the outcome of the trial.

### 3.   Remaining parts of Claim 2

Bourdon's three other allegations of ineffective assistance of counsel in Claim 2 are that his attorneys failed to (1) obtain or review a recording of the 911 call, (2) consult medical experts or adequately investigate the victims' wounds, or (3) investigate the blood drop evidence. None of these claims

---

[6] As discussed above, Bourdon appears to concede in filings in state court proceedings that the state produced a copy of the EMT's report to the defense prior to trial. For purposes of this order, and in light of Bourdon's pro se status, the court assumes that Bourdon did not receive a copy of the report until post-trial proceedings.

has merit.

Bourdon makes no coherent argument as to the relevance of the 911 call or how he suffered any prejudice by his counsel's failure to obtain a transcript of the call. Carlos Blanco, who made the 911 call, testified at trial and was cross-examined by defense counsel. Bourdon does not explain why a transcript of the call would have made any difference in light of Blanco's testimony.

Bourdon also does not explain how he suffered prejudice from his counsel's alleged failure to investigate adequately the nature and severity of the victims' wounds. Four doctors testified about Fitzgerald's and Dunlap's wounds, and defense counsel cross-examined each one. Bourdon offers no theory as to how obtaining medical experts to testify about the wounds would have changed the outcome of the trial.

Finally, Bourdon's claim regarding the blood drop evidence is similarly unavailing. Bourdon appears to contend that an analysis of that evidence would have undermined Fitzgerald's and Dunlap's testimony that they briefly went back into Bourdon's house after the attack to get their father. Even if Bourdon is correct, which, again, is far from clear from the record, there is no reasonable possibility that such minor impeachment evidence would have led to a different result in Bourdon's trial.

Further, as the warden notes in his memorandum, Bourdon's lawyers testified that they made a strategic decision not to pursue any blood drop evidence. They determined that the absence of Bourdon's blood undermined their defense that Dunlap's wound was the result of a struggle and not an intentional stabbing. This type of strategic decision is insufficient to form the basis of an ineffective assistance of counsel claim. See Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000) ("Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies. This is especially true during trial when time is short.").

For these reasons, the warden is entitled to summary judgment on Bourdon's ineffective assistance claim in Claim 2.

### B.   Failure to Challenge Indictment (Claim 3)

Bourdon asserts that his counsel should have challenged his indictment for first degree assault because it incorrectly stated that Dunlap suffered a serious bodily injury and inaccurately described the injury as a "stomach bleed." Bourdon contends that the charges would have been dismissed had his attorneys challenged the indictment.

Under New Hampshire law, an "indictment, information or complaint is sufficient if it sets forth the offense fully,

plainly, substantially and formally . . . ." RSA § 601:4. "To meet this constitutional standard, an indictment must inform a defendant of the offense with which he is charged with sufficient specificity to enable him to prepare for trial and at the same time protect him from being put in jeopardy a second time for the same offense." State v. Marshall, 162 N.H. 657, 661 (2011). "The question is not whether the indictment could have been more certain and comprehensive, but whether it contains the elements of the offense and enough facts to warn a defendant of the specific charges against him." Id. at 661-62.

Bourdon's indictment for first degree assault reads that he "purposely caused serious bodily injury to [Dunlap] by stabbing him in the abdominal area with a knife, causing a retroperitoneal hematoma ('stomach bleed') . . . ." Doc. no. 4-1 at 13. The indictment informed Bourdon of the charge against him and contained the elements of the offense. Although, as discussed above, Bourdon contends that the evidence adduced at trial was insufficient to prove that Dunlap suffered a stomach bleed or that he suffered "serious bodily injury," that contention does not implicate the sufficiency of the indictment. An attempt by his attorneys to dismiss the indictment on the grounds Bourdon raises would have been futile. Therefore, Bourdon's claim for ineffective assistance of counsel based on

31

his attorneys' failure to challenge the indictment is without merit. The warden is entitled to summary judgment on Claim 3.

#### C. Prosecutor's Opening Statement (Claim 4)

Bourdon asserts that his attorneys unreasonably failed to object to the prosecutor's opening statement, which allegedly mischaracterized the evidence and the extent and severity of Dunlap's wound. Although Bourdon's petition is unclear as to the exact portions of the prosecutor's opening statement to which he believes his counsel should have objected, he refers to several alleged misrepresentations in his objection. Specifically, Bourdon contends that his counsel was ineffective for failing to object to the prosecutor telling the jury that Bourdon attempted to kill Dunlap, Bourdon stabbed Dunlap in the stomach, and Dunlap suffered a serious injury. He also notes that the prosecutor stated she would be showing the jury pictures of the wound, even though she never did or intended to do so.

Bourdon does not explain how his attorneys' decision to not object to the prosecutor's statements, which summarized evidence the prosecution planned to show the jury, could give rise to an ineffective assistance of counsel claim. The fact that Bourdon believes events occurred differently from the way the prosecutor described during her opening statement, for example that Dunlap was not stabbed, but rather received a "laceration during a

struggle," doc. no. 41 at 20, does not render the prosecutor's remarks objectionable. See, e.g., 2 Lane Goldstein Trial Technique § 10:5 (3d ed.) (Westlaw, last updated Nov. 2021) (explaining the purpose of an opening statement is to forecast for the jury what admissible evidence is expected to be presented at trial). Even if his counsel's lack of an objection were deficient representation, which it was not, Bourdon does not explain how any objection to the opening statement creates a reasonable probability that the outcome of his trial would have been different. The warden is thus entitled to summary judgment on Claim 4.

### D.   Defense Counsel's Opening Statement (Claim 5)

Bourdon contends that his trial attorney, Keans, was ineffective for failing to dispute the prosecution's version of events or present the theory in her opening statement that Bourdon had acted in self-defense. The record, viewed in the light most favorably to Bourdon, does not support that claim.

During her opening statement, Keans forecasted the victims' credibility issues several times, and discussed how the evidence would show that Fitzgerald's and Dunlap's descriptions differed from the other's. Trial Tr. at 77-81. Keans testified during post-trial proceedings that her decision not to raise self-defense in her opening statement was strategic because it was

not certain that Bourdon would testify. Moreover, she stated in
her opening statement that the evidence would show that
Fitzgerald and Dunlap instigated the struggle. Keans later
explained why she and Tessier thought it more prudent to pursue
the "struggle" defense. See, e.g., Young v. Pliler, 273 F.
App'x. 670, 672-73 (9th Cir. 2008) (concluding trial counsel was
not ineffective for failing to put on evidence that defendant
acted in self-defense because "[t]rial counsel could have made a
rational, strategic decision not to present Young's weak self-
defense case at trial," and "could have rationally believed the
'surprise' theory was stronger than 'self-defense'").

Nothing in the record supports Bourdon's contention that
Keans's opening statement fell below an objective standard of
reasonableness. Even if it did, there is no reasonable
probability that the outcome of the trial would have been
different had Keans argued in her opening statement the points
Bourdon urges in his petition. Viewing the evidence in the light
most favorable to Bourdon, the warden is entitled to summary
judgment on Claim 5.

E.  Failure to Impeach or Effectively Cross-Examine
    Witnesses (Claim 6)

Bourdon alleges that his attorneys failed to cross-examine
several witnesses in an effective manner, including Fitzgerald,

34

Dunlap, Detective Lee, Blanco (the 911 caller), Beverly Trevino
(Bourdon's neighbor), and the doctors who treated Fitzgerald and
Dunlap. Bourdon contends that his attorneys did not confront
Fitzgerald and Dunlap with inconsistent statements and did not
bring out facts from other witnesses that could have further
undercut Fitzgerald's and Dunlap's testimony.

The record, viewed in the light most favorable to Bourdon,
does not show that his attorneys' cross-examination of witnesses
was unreasonable. His lawyers cross-examined every witness
Bourdon mentions and brought out facts favorable to Bourdon's
theory of the case. In post-trial proceedings, Bourdon's
attorneys testified that they tried to avoid emphasizing the
circumstances of the incident and the wounds, which they did not
believe would help Bourdon, and that they intentionally did not
bring out certain of the victims' minor inconsistent statements
in pursuit of that strategic objective. They also testified that
they challenged both victims on various portions of their
testimony that undermined their story and aided in the defense's
theory of the case. The record supports Bourdon's attorneys'
testimony.

Even if there were a genuine issue of material fact as to
whether Bourdon's attorneys' cross-examination of witnesses fell
below the standard of reasonableness, he did not suffer any
prejudice. Bourdon points to several instances where he believes

his counsel failed either to elicit or use other witnesses'
testimony to impeach Fitzgerald and Dunlap, such as to dispute
their testimony that they ran back into the house after the
incident to get their father rather than leaving with him at the
same time. In light of the evidence adduced at trial, such
discrepancies, if brought up on cross-examination, do not create
a reasonable probability that the outcome of the trial would
have been different. The warden is entitled to summary judgment
on Claim 6.

F.    Failure to Prepare Bourdon to Testify (Claim 7)

Bourdon argues that his attorneys failed to prepare him
adequately to testify in that they did not ensure that he
understood the evidence regarding the nature and severity of
Dunlap's wound. Specifically, he contends that his attorneys
failed to explain that Dunlap did not have a serious injury and
that the wound was not as severe as the indictment suggested.

This argument is again premised on Bourdon's steadfast
belief that Dunlap's injury was exaggerated. As discussed above,
the evidence does not support Bourdon's characterization of
Dunlap's wound. Therefore, Bourdon's ineffective assistance of
counsel claim based on his attorneys' failure to view the
evidence as he did is without merit.

36

Even if Bourdon could show deficient representation regarding his attorneys' actions concerning preparing him to testify, Bourdon suffered no prejudice. Tessier testified during post-conviction proceedings that he did not want Bourdon to testify because of inconsistencies in his story, but that Bourdon insisted. Keans' testimony echoed Tessier's—that she did not think it was a good idea for Bourdon to testify—and she also explained that she and Tessier discussed Bourdon's anticipated testimony with him before the day he took the stand. Bourdon does not dispute his attorneys' testimony or explain how his testimony would have been any different had his attorneys described the nature of Dunlap's wound in a manner consistent with Bourdon's own views. Further, Bourdon was present during the trial and, before testifying, heard testimony from Dunlap, Fitzgerald, and their treating doctors about the boys' wounds. Viewing the evidence in the light most favorable to Bourdon, the warden is entitled to summary judgment on Claim 7.

G.   Failure to Introduce Additional Evidence Regarding the Victims' Wounds (Claims 8 and 9)

In Claims 8 and 9, Bourdon alleges that his attorneys provided ineffective assistance of counsel by failing to offer evidence regarding the victims' wounds. In Claim 8, Bourdon alleges that his attorneys offered ineffective assistance by

37

failing to present expert medical testimony regarding the size of the knife used to inflict the victims' wounds and the severity of Dunlap's wound. In Claim 9, Bourdon makes the same allegations, but with regard to his attorneys' failure to call the EMTs as witnesses to testify as to the nature and severity of Dunlap's wound.

For the reasons discussed above in the court's analysis of Bourdon's allegations in Claim 2, even if his attorneys acted unreasonably in failing to present medical expert testimony or call the EMTs as witnesses, Bourdon suffered no prejudice. Viewing the evidence in the light most favorable to Bourdon, there is no reasonable probability that, but for these alleged errors, the result of his trial would have been different. The warden is entitled to summary judgment on Claims 8 and 9.

## H.  Failure to Object to Prosecutorial Misconduct (Claim 10)

Bourdon contends that the prosecutor engaged in misconduct and that his lawyers were ineffective for failing to object.[7] Specifically, he alleges that his attorneys did not object to the following instances of prosecutorial misconduct: (1) the prosecutor's closing argument mischaracterized testimony concerning the victims' wounds and the incident generally,

---

[7] Bourdon also alleges a separate claim of prosecutorial misconduct in Claim 12.

38

including Trevino's testimony, (2) the prosecutor vouched for the victims' credibility in her closing argument, (3) the prosecutor did not disclose certain evidence, including a transcript of the 911 call and the EMT report, and (4) the prosecutor knowingly relied on the victims' perjured testimony.

Bourdon's allegations, if supported by the record, could show that the prosecution acted improperly. For example, a prosecutor cannot include evidence in the closing argument that was not introduced during trial. See United States v. Corliss, 919 F.3d 666, 670 (1st Cir. 2019). A prosecutor also cannot vouch for the credibility of a witness by suggesting that the jury should believe a government witness because the witness was offered by the government, United States v. Rosario-Perez, 957 F.3d 277, 300-01 (1st Cir. 2020), or knowingly use perjured testimony. United States v. Bagley, 473 U.S. 667, 679-80 (1985). In addition, a prosecutor is required to disclose to the defense material exculpatory and impeachment evidence. United States v. Laureano-Salgado, 933 F.3d 20, 26 (1st Cir. 2019). A defendant may base an ineffective assistance of counsel claim on his attorney's failure to object to a prosecutor's improper conduct. See Kirwan v. Spencer, 631 F.3d 582, 590 (1st Cir. 2011).

The problem with Bourdon's claim, however, is that viewing the evidence in the light most favorable to him, the record is devoid of any factual support for any of his allegations. The

prosecutor was well within the bounds of an appropriate closing to repeat testimony given during the trial, even if Bourdon disagrees with that testimony, and to suggest that the jury draw inferences as to the credibility of the testimony given by the witnesses, particularly when contrasting it with Bourdon's.[8] See United States v. Henderson, 320 F.3d 92, 105 (1st Cir. 2003); United States v. Garcia, 818 F.2d 136, 143 (1st Cir. 1987). He also has not shown that either Fitzgerald or Dunlap gave perjured testimony at trial or that the prosecutor knowingly relied on perjured testimony. Bourdon's mere disagreement with the boys' version of events does not create a genuine dispute of fact as to whether they were lying. Nor has Bourdon shown that any discovery violations occurred with regard to the transcript of the 911 call or the EMT report, as he has not demonstrated that the prosecution failed to comply with an obligation to produce either item or that they would provide exculpatory or impeachment evidence.

Therefore, the warden is entitled to summary judgment on Bourdon's claim of ineffective assistance of counsel based on his attorneys' failure to object to prosecutorial misconduct in Claim 10.

---

[8] The court addresses Trevino's testimony and Bourdon's misplaced complaints about the prosecutor's reference to that testimony during its discussion of Bourdon's claim of court error in Claim 14.

I. Conflict of Interest (Claim 11)

The right to effective assistance of counsel includes the right to be represented by counsel without a conflict of interest. United States v. Simon, 12 F.4th 1, 53 (1st Cir. 2021). In addition, the Due Process Clause of the Fourteenth Amendment also protects a defendant's right to be represented by conflict-free counsel. See Wood v. Georgia, 450 U.S. 261, 271-72 (1981). To prevail on a claim that counsel represented him under a conflict of interest, a defendant must show "that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." Simon, 12 F.4th at 53 (quotation omitted). A defendant must show that his attorney had an actual conflict of interest, "as opposed to a mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002).

Bourdon contends that Tessier represented him under a conflict of interest because he wanted to become a prosecutor and that a guilty verdict in Bourdon's case would help further

that interest.[9] Bourdon, however, provides no evidence to support his claim. Bourdon was represented by both Tessier and Keans, and he makes no allegations or points to any evidence that Keans had a conflict of interest or that Tessier overrode any strategy Keans wanted to pursue. He also presents no evidence that Tessier and Keans failed to pursue a plausible alternative defense strategy, much less that they did so in order to further Tessier's goal of becoming a prosecutor. As such, his claim that his counsel represented him under a conflict of interest in Claim 11 fails.

III. <u>Prosecutorial Misconduct (Claim 12)</u>

In addition to his claim for ineffective assistance of counsel for failing to object to the prosecution's alleged improper conduct, Bourdon also asserts a separate claim based on prosecutorial misconduct which relies on similar allegations. For example, Bourdon alleges that the prosecutor knowingly put forth Dunlap's and Fitzgerald's perjured testimony and that she failed to produce exculpatory evidence. For the reasons provided

---

[9] Neither party points to anything in the record showing Tessier's career path after Bourdon's trial. However, Bourdon stated in his motion to reopen his hearing for a new trial in superior court that, shortly after his trial, Tessier accepted an offer for a job in the "Hudson Prosecutor's Office." Doc no. 32-2 at 13.

in the court's discussion of Claim 10, Claim 12 also lacks merit.

Bourdon also alleges that the prosecutor conspired with Detective Lee to obtain a grand jury indictment for first degree assault based on fabricated evidence that Dunlap had a serious bodily injury and stomach bleed. Simply put, there is no evidence in the record supporting a conspiracy or the fabrication of evidence. Bourdon's claims regarding whether Dunlap suffered serious bodily injury and concerning the description of Dunlap having suffered a "stomach bleed" are addressed above and do not entitle him to relief. The warden is entitled to summary judgment on Claim 12.

## IV. Conspiracy (Claim 13)

Bourdon alleges that Tessier conspired with the prosecutor to violate his right to a fair trial to advance both of their careers in violation of his Sixth and Fourteenth Amendment rights. A conspiracy requires an agreement to commit an unlawful act between at least two parties, knowing and voluntary participation, and an overt act in furtherance of the conspiracy. See United States v. Clough, 978 F.3d 810, 816 (1st Cir. 2020). Bourdon alleges that in furtherance of their conspiracy, Tessier and the prosecutor worked together to accomplish many of the actions that form the basis of his other

claims. For example, he alleges a conspiracy to fabricate evidence of a stomach bleed, to allow the admission of perjured testimony, and to refrain from obtaining exculpatory medical expert evidence.

Bourdon provides no competent evidence that any of these acts occurred or of the conspiratorial agreement that he alleges, and the record does not support any such agreement. As explained above, Bourdon relies on improbable inferences that do not support his claim. Therefore, the warden is entitled to summary judgment on Claim 13.


V. Court Error (Claim 14)

Bourdon argues that the trial court violated his right to a fair trial by failing to declare a mistrial, sua sponte, during the prosecutor's closing argument. A prosecutor's closing argument will violate a defendant's Fourteenth Amendment right to due process only if "the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotation omitted).

In support of his claim, Bourdon contends that the prosecutor argued facts that were not in evidence in summarizing Trevino's testimony. Specifically, the prosecutor in closing stated that Trevino testified that Dunlap and Fitzgerald came

out of Bourdon's house and then went back to get Derome.
Instead, Trevino testified that she saw a young man, who was
bleeding, open the door and leave Bourdon's house, and that an
older man and a younger boy were behind him with the younger boy
urging his dad to leave.

Bourdon believes that this discrepancy, and the court's
failure to declare a mistrial sua sponte after the prosecutor's
statement, rendered his conviction a denial of due process. It
did not.

Bourdon testified that Derome left the house on his own
before the boys. Regardless of the minor discrepancy between
Trevino's testimony and the prosecutor's statement, Fitzgerald,
Dunlap, and Trevino all testified that Derome left with the
boys, not before. This testimony contradicts Bourdon's testimony
that Derome left on his own before the boys.

The prosecutor's comments about Trevino's testimony caused
no unfairness and did not require a mistrial. The warden is
entitled to summary judgment on Claim 14.


VI.  Equal Protection (Claim 15)

Bourdon alleges that he is bringing an equal protection
class-of-one claim. A class-of-one equal protection claim
requires proof that the plaintiff was intentionally treated
differently from others who were similarly situated to the

plaintiff without a rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A plaintiff bringing a class-of-one claim bears the burden of showing that he was similarly situated to others in all respects that are relevant to the challenged action. Zell v. Ricci, 957 F.3d 1, 12-13 (1st Cir. 2020).

Bourdon provides no evidentiary support for his equal protection claim or to suggest that he was treated differently from others who were similarly situated. Instead, his equal protection claim is simply a rehash of his claims of ineffective assistance of counsel, which are without merit. He has not shown that he is in custody because his conviction violated the Equal Protection Clause. Therefore, the warden is entitled to summary judgment on Claim 15.


Conclusion

For the foregoing reasons, the warden's motion for summary judgment (document no. 32) is granted on all claims. As a result, all of the claims alleged in the petition are denied.

Because Bourdon has not made a substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Habeas Corpus Cases Under Section 2254.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

August 10, 2022

cc:  Ronald Bourdon, pro se.
     Counsel of record.